# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 2:15cr130 |
| | ) |
| ADAM CAIN, | ) |
| | ) |
| Defendant. | ) |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by Dana J. Boente, United States Attorney, and Elizabeth M. Yusi, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. § 3553(a). The government has no objection to the content of the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is 360 months to life imprisonment. Based on the nature of the offense, the defendant's criminal history, characteristics, and related conduct, the United States asks the Court to impose a sentence of imprisonment of 360 months. If necessary, the government intends to call Special Agent David Desy, Federal Bureau of Investigation, to testify regarding the facts contained herein. In support of its position, the government states as follows:

### I. BACKGROUND

On December 10, 2015, defendant ADAM CAIN pleaded guilty to one count of Coercion and Enticement of Minors, in violation of 18 U.S.C. § 2422(b).[1] Defendant's sentencing hearing is scheduled for March 24, 2016, before the Honorable United States District Judge Arenda L.

---

[1] A violation of 18 U.S.C. § 2422(b) carries a mandatory minimum of ten years' imprisonment and a maximum penalty of life imprisonment.

Wright Allen. At that hearing, the government will maintain that a sentence of 360 months' imprisonment is reasonable and appropriate given the serious facts and circumstances underlying the instant case.

The investigation of CAIN started on August 24, 2015, when Windsor (Virginia) Police Department requested the Norfolk FBI to assist in an investigation regarding defendant ADAM CAIN, then 40 years old and living in Roanoke Rapids, North Carolina, possibly having a sexual relationship with a 15 year old minor female, Jane Doe, who is a relative of CAIN. Jane Doe was living in Windsor at that time. In the instant case, Windsor Police Department received information from M.M., who was a resident in Windsor and another relative of Jane Doe. M.M. had allowed Jane Doe to borrow her Kindle tablet. Jane Doe was not supposed to be using social media and M.M. found out that she had a Facebook account. Upon reviewing the tablet, M.M. found that Jane Doe was chatting with CAIN about romantic and sexual topics. M.M. then figured out that CAIN was traveling from his residence in North Carolina to meet with Jane Doe in Windsor to have sexual relations.

CAIN had, on multiple occasions, picked up Jane Doe and brought her to stay in North Carolina at his residence there. M.M. confronted Jane Doe, who admitted only that the suspect had purchased her underwear and sex toys. Jane Doe later admitted to having sexual relations with CAIN.

FBI reviewed the chats on the tablet and found the following chat from August 8, 2015, among others:

    CAIN:       yes baby

    JANE DOE:  I don't think we will have kids

    CAIN:       why you say that

2

| | | |
|---|---|---|
| JANE DOE: | I don't want to talk about it | |
| CAIN: | baby have some faith | |
| JANE DOE: | I'm hurting and think I'm going to start soon. | |
| JANE DOE: | I'm just going to cry the rest of the month. | |
| CAIN: | baby we gave to try when yer most fertile so what if it did not happen now we have time ok. | |

Due to a previous conviction, CAIN is required to register as a sex offender in North Carolina and was doing so during the relevant time period. In 2008, CAIN was convicted of Indecent Liberties with a Child in North Carolina. The conviction stems from CAIN's sexual relationship with a 13 year old, who was also a relative of CAIN.

CAIN was on probation during the relevant time period. On August 25, 2015, CAIN's probation officer in North Carolina, with assistance from the FBI, conducted a search of CAIN's property in Roanoke Rapids, North Carolina, which included a preview of his computers, cell phone, and digital media storage devices. During the search, FBI interviewed CAIN regarding concerns that he may have a sexual relationship Jane Doe. During the interview CAIN admitted to communicating to Jane Doe via the above Facebook accounts and via texts, saying that he was leading her on in the belief that they were in a romantic relationship. He said he did this because Jane Doe was depressed and suicidal. CAIN said that Jane Doe had an infatuation with CAIN. CAIN said that they had never kissed on the lips or touched each other sexually. CAIN admitted to providing Jane Doe with lubricant for sex, which she called a sex toy, and to sending her pictures of underwear and buying her underwear and a skirt.

CAIN further said that Jane Doe stayed at his residence three times in the recent past, and slept in the room adjacent to his. Each time, CAIN drove to pick up Jane Doe in Windsor,

3

Virginia, and brought her back to his residence in Roanoke Rapids, North Carolina, by himself. He would then later bring Jane Doe back to Windsor. He said the last time she visited was about two weeks prior to the search and that she stayed for a week.

FBI obtained reports from their onsite review of CAIN's electronics. There were five sexually explicit pictures which had geolocation information resolving to CAIN's address in Roanoke Rapids, North Carolina. Image IMG_0635.JPG, which depicts a nude close-up of a female vagina with her legs spread apart on a green sheet with a skirt pulled up, was taken on August 5, 2015. The other four sexually explicit pictures were all taken on August 8, 2015. IMG_0637.JPG depicts a naked girl bending over with her buttocks to the camera. The image is of the naked buttocks of the female showing her vulva, with the lower portion of a gray shirt and blue pants or jeans pulled down. The female was lying on a green sheet. IMG_0638.JPG, IMG_0639.JPG, and IMG_0640.JPG all depicted a nude close-up of a female vagina with her legs spread and a naked stomach pressed against the vagina. The female in these three pictures appeared to be wearing a gray shirt and a black skirt with hazy white stripes. There were also pictures of female underwear on CAIN's phone as well as a picture of a black skirt with hazy white stripes, hanging on a rack in what appears to be a store. This picture, IMG_0621.JPG, was taken on July 14, 2015, and geo-located to the Walmart in Roanoke Rapids, North Carolina.

On September 1, 2015, CAIN drove to the FBI in Chesapeake, Virginia. He was informed of his *Miranda* rights and signed a waiver. He was interviewed and admitted to having sex with Jane Doe on or about August 8, 2015. He also identified Jane Doe as the female in all of the sexually explicit pictures found on his cell phone. CAIN admitted to taking the picture of Jane Doe's vagina on August 5, 2015, and the picture of her buttocks on August 8, 2015. He

said that he let Jane Doe use his cell phone to take the other three pictures, which were of her on top of CAIN after they had just had sex.

CAIN and Jane Doe had been talking for some time prior to August 5, 2015, which included romantic and sexually explicit talk about what they would do when they were together. CAIN also stated that he took his phone that contained the sexually explicit images with him when he drove Jane Doe to Virginia.

## II. STANDARDS GOVERNING SENTENCING

In three recent opinions, the Supreme Court pronounced a new sentencing regime. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *Kimbrough v. United States*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.")

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

### III. DEFENDANT'S OBJECTION

The PSR properly applies the cross-reference to the production of child pornography Guideline § 2G2.1 because the offense involved "causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G. § 2G1.3(c). Defendant argues that the cross reference does not apply because CAIN did not engage in the conduct for the "purpose of producing a visual depiction" of the sexually explicit conduct. Defendant is incorrect, and the cross reference should apply.

The Fourth Circuit has looked at this issue in reference to the Guidelines in *United States v. Cox*. 744 F.3d 305 (4th Cir. 2014). In *Cox*, the production guideline (U.S.S.G. § 2G2.1) was used in a possession of child pornography case because the crime, as here, involved the production of child pornography. The court noted that the application note stated that the cross-reference is to be "construed broadly." *Id.* at 309. The court further noted that a defendant does not have to be single-minded in terms of his intent to produce an image for a court to find that he acted "for the purpose" of producing a sexually explicit image of a minor. *Id.* (citing *United States v. Hughes*, 282 F.3d 1228, 1231 (9th Cir. 2002), *Untied States v. Veazey*, 491 F.3d 700, 707 (7th Cir. 2007).)

6

Here, while the cross-reference to the production Guideline is contained in U.S.S.G. § 2G1.3 rather than 2G2.2 as in *Cox*, the exact same wording is used both cross-reference subsections in relation to when the cross reference should be applied. U.S.S.G. § 2G1.3(c), U.S.S.G. § 2G2.2(c). Further, the application noted in U.S.S.G. § 2G1.3 also states that the cross-reference should be construed "broadly" as in *Cox*. U.S.S.G. § 2G1.3, comment. (n. 5), U.S.S.G. § 2G2.2, comment. (n.5). The images at issue show purposeful conduct and that the defendant posed and/or put Jane Doe in a sexually explicit manner so that he could take pictures of her genitalia. He used Jane Doe <u>for the purpose of</u> producing images depicting her engaged in sexually explicit conduct. If necessary, the government will provide the images to the Court so that the Court can see the obviousness of the purpose.

### IV. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

**A.     Nature and Circumstances of the Offense**

Just the nature of the charge to which the defendant has pleaded guilty, coercion and enticement of a minor to engage in criminal sexual activity, in and of itself calls for a substantial term of imprisonment. However, the Court must look at the specific the circumstances surrounding CAIN's offense. When the Court does this, it will realize that CAIN's conduct is

disturbing on many levels. First, CAIN has been down this road before. Several years ago, he took advantage of another relative, who was even younger than Jane Doe. While he was originally charged with more severe crimes, he pleaded to Indecent Liberties with a Minor. However, the documents underlying the conviction show that he had sexual relations with a minor who he was related to, just as in this case. Here, CAIN again abused a relative, namely Jane Doe. He was entrusted by her guardians to take her with him for visits. CAIN twisted his relationship with Jane Doe to satisfy his own perverted sexual desires. He also decided to make images of some of his abuse, thereby assuring he could relive his victimization of Jane Doe.

It is also clear that not only Jane Doe's age made her vulnerable, but her mental state. CAIN told the FBI that Jane Doe was depressed and suicidal. And, the Court can get an insight into Jane Doe's mind in the brief chat that is described *infra*. This is a 15 year-old girl who was distraught over not being pregnant. She was <u>purposefully</u> trying to get pregnant. We are left to guess as to why she was in this mindset. Regardless, CAIN reassures her they can try again the next time. Thus, CAIN was clearly aware of Jane Doe's delicate mental status, but still continued his abuse.

The government requests a severe term of imprisonment for CAIN so that he may never have the opportunity to groom and abuse minors again. The government believes the exceptional facts and circumstances of this case warrant an exceptional sentence of incarceration of 360 months.

### B. Defendant's Criminal History

As stated, defendant has already been down this road with almost the same fact pattern as in the instant case. In fact, he was on probation during the instant offense. This is a very scary fact and one that the Court should consider heavily in determining an appropriate offense.

### C. Need to Deter Future Criminal Conduct and to Protect the Public

Defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public. As discussed herein and in the PSR, CAIN has a documented history of being sexually interested in minors and acting out on those desires. The government avers that the likelihood that CAIN will return to this predatory behavior in the future is strong, if not a guarantee. He was on <u>probation</u> for the exact same offense behavior at the time of the instant offense. He had gone to jail already for the exact same offense. Yet, he still could not control himself and sought out another vulnerable minor. Adequate punishment, deterrence and protection of the public all call for the severe sentence for CAIN's offenses of 360 months' imprisonment. 18 U.S.C. § 3553(a)(2).

### D. Need to Provide Treatment to Defendant

Due to the nature and duration of the defendant's crimes, defendant should be ordered to participate in a sex offender treatment program while incarcerated.

### E. Need to Avoid Unwarranted Sentencing Disparities

CAIN's history and characteristics, along with his actions related to the crimes of conviction, all support a severe sentence of imprisonment. While this Court has not seen many of these types of cases, it has seen many similar offenders convicted of production of child pornography that were similarly situated. A sentence of 360 months would place the defendant in the same position as many defendants charged with the same or similar offenses. As such, the need to avoid unwarranted sentence disparities clearly weighs in favor of a severe Guidelines sentence of 360 months. 18 U.S.C. § 3553(a)(6).

## V. CONCLUSION

The government agrees that the PSR's Guidelines calculations are correct. For the reasons stated above, the government asks the Court to impose a sentence of imprisonment of 360 months.

>Respectfully Submitted,
>
>DANA J. BOENTE
>UNITED STATES ATTORNEY

By: _____/s/_____
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: elizabeth.yusi@usdoj.gov

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of March, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Rodolfo Cejas, Esq.
Attorney for the Defendant

I FURTHER CERTIFY that on this 17th day of March, 2016, I caused a true and correct copy of the foregoing Position of the Government with Respect to Sentencing Factors to be e-mailed to the following:

Jason D. Cole
Senior U.S. Probation Officer

    /s/_____
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Phone: 757-441-6331
Fax: 757-441-6689
E-mail: elizabeth.yusi@usdoj.gov